Paul T. Johnson, Esq. (SBN 163077)
Mark E. Bale, Esq. (SBN 174921)
PAUL T. JOHNSON LAW GROUP, APC
5055 Avenida Encinas, Suite 210
Carlsbad, California 92008
Phone: (760) 431-8988
Fax:    (760) 431-9049
paul@ptjlaw.com
mark@ptjlaw.com

Attorneys for Plaintiff
Federal Deposit Insurance Corporation
Acting As Receiver for La Jolla Bank, FSB

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION ACTING AS RECEIVER FOR LA JOLLA BANK, FSB,<br><br>         Plaintiff,<br><br>vs.<br><br>MARCHMONT, LLC, a California limited liability company; TWIN DEVELOPMENT COMPANY, a California corporation; BENWARD WALLACE, an individual; VICTORVILLE 244 LOTS, LLC, a California limited liability company;  KEN RUBIN, an individual; GINA R. RUBIN, an individual; and TANDIS HOMES VICTORVILLE 244 LP, a California limited partnership,<br><br>         Defendants. | CASE NO.  **'12CV1242 DMS WMc**<br><br>**COMPLAINT FOR:**<br><br>1) **JUDICIAL FORECLOSURE;**<br>2) **BREACH OF CONTRACT;**<br>3) **BREACH OF CONTRACT;**<br>4) **BREACH OF CONTRACT GUARANTY;**<br>5) **BREACH OF CONTRACT GUARANTY;**<br>6) **OPEN BOOK;**<br>7) **ACCOUNT STATED;**<br>8) **MONEY LENT; and**<br>9) **MONEY HAD AND RECEIVED;** |

Plaintiff, FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR LA JOLLA BANK, FSB ("FDIC-R" or "Plaintiff") for its complaint alleges as follows:

**JURISDICTION**

1.   This Court has original jurisdiction over this matter pursuant to 12 U.S.C. § 1441a(l)(1) and 12 U.S.C. § 1819(b)(2)(A), which state that any action to which the Federal Deposit Insurance Corporation is a party in any capacity shall be deemed to arise under the laws of the United States.

1


2. This Court has subject matter jurisdiction over this action pursuant to provisions of the Federal Deposit Insurance Act, 12 U.S.C. § 1811 et seq.; 12 U.S.C. §§ 1819 (b)(1), 1819(b)(2)(A).

3. Actions to which the FDIC-R is a party in its receivership capacity are deemed to arise under the laws of the United States.

**VENUE**

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because: (1) the principal place of business for the subject depository institution, La Jolla Bank, FSB, was Rancho Santa Fe, California, in the County of San Diego; (2) the contract(s) alleged herein were entered into and to be performed in this judicial district; (3) the contract(s) alleged herein provide that any litigation resulting therefrom be initiated in San Diego County; and (4) Plaintiff is informed and believes that each of the defendants to this action either resides in or maintains its principal place of business within the bounds of the Southern District. Venue is therefore proper in the United States District Court for the Southern District of California.

**THE PARTIES**

5. On February 19, 2010, La Jolla Bank, FSB ("LJB") was closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation was appointed as receiver of LJB. LJB no longer operates as a bank. Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i) (the Federal Deposit Insurance Act), the FDIC-R succeeded to "all rights, titles, powers, and privileges" of LJB. As receiver, the FDIC-R took over the assets of LJB to collect all obligations and money due the institution and to preserve and conserve the assets of LJB pursuant to 12 U.S.C. § 1821(d)(2)(B). Plaintiff brings this action as successor to all rights, titles, powers, and privileges of LJB.

6. Plaintiff is informed and believes and thereon alleges that Defendant, MARCHMONT, LLC, ("MARCHMONT") is a California limited liability company with it principal place of business in the City of Carlsbad, County of San Diego.

7. Plaintiff is informed and believes and thereon alleges that Defendant, TWIN DEVELOPMENT, LLC, ("TWIN") is a California limited liability company with its principal place of business in the City of Carlsbad, County of San Diego.

///

8. Plaintiff is informed and believes and thereon alleges that Defendant WALLACE BENWARD ("BENWARD"), is an individual who resides within this Judicial District and whose principal residence is located in the City of Carlsbad, County of San Diego.

9. MARCHMONT, TWIN, and BENWARD are referred to herein collectively as the "Marchmont Defendants."

10. Plaintiff is informed and believes and thereon alleges that Defendant VICTORVILLE 244 LOTS, LLC ("VICTORVILLE") is a California limited liability company with its principal place of business in the City of San Diego, County of San Diego.

11. Plaintiff is informed and believes and thereon alleges that Defendant KEN RUBIN ("K. RUBIN"), is an individual who resides within this Judicial District and whose principal residence is in the City of San Diego, County of San Diego.

12. Plaintiff is informed and believes and thereon alleges that Defendant GINA R. RUBIN ("G. RUBIN") is an individual who resides within this Judicial District and whose principal residence is in the City of San Diego, County of San Diego.

13. Plaintiff is informed and believes and thereon alleges that K. RUBIN and G. RUBIN are, and at all times relevant hereto are and were, husband and wife. K. RUBIN and G. RUBIN are jointly referred to herein as the "RUBINS."

14. VICTORVILLE and the RUBINS are referred to herein collectively as the "Victorville Defendants."

15. Plaintiff is informed and believes that thereon alleges that Defendant TANDIS HOMES VICTORVILLE 244, LP ("TANDIS"), is a limited partnership organized under the laws of the State of California who does business within this Judicial District and whose principal place of business is in the City of Lake Forest, County of Orange, California.

16. FDIC-R is informed and believes, and on that basis alleges that VICTORVILLE is the owner of that certain real property commonly known as "the 60 Acres on the Southeast Quadrant of Hopland Street and El Evado Road in Victorville, California 92393" and more particularly described in the legal description attached as Exhibit "1" hereto and incorporated herein by this reference. Said property shall be referred to herein as the "Victorville Property."

**UNDERLYING FACTS**

**The Victorville Loan**

17.     On or about May 21, 2004, VICTORVILLE entered into a loan transaction with LJB whereby VICTORVILLE received a loan for Two Million Six Hundred Thousand Dollars ($2,600,000), referred to as LJB loan number 105120724 (the "Victorville Loan").  The following documents were executed in connection with the Victorville Loan:

   17.1.     <u>Victorville Note</u>.  A promissory note, dated May 21, 2004, was executed in favor of LJB by VICTORVILLE in the principal amount of Two Million Six Hundred Thousand Dollars ($2,600,000) (the "Victorville Note").  The Victorville Note provided for a variable interest rate based upon an initial Index (defined therein as "THE LOWEST NEW YORK PRIME RATE IN EFFECT ON THE FIRST BUSINESS DAY OF THE MONTH (CYCLE) AS PUBLISHED IN THE MONEY RATE SECTON OF THE WEST COAST EDTION OF THE WALL STREET JOURNAL") plus 1.750 percentage points over the Index, resulting in an initial interest rate of 5.750%.  The Victorville Note further provided that, upon default, the interest rate then in effect would immediately increase by 4.750 percentage points over the Index and that the borrower would be charged a late charge of five percent (5.000%) of the regularly scheduled payment or $5.00, whichever was greater.  Pursuant to the terms of the Victorville Note, VICTORVILLE agreed, among other things, to make regular monthly payments of all accrued, unpaid interest due as of each payment date, beginning July 1, 2004, and to make one lump sum payment on June 1, 2007, in the full amount of any and all principal, interest, and other unpaid amounts due under the Victorville Note.  A copy of the Victorville Note is attached hereto as Exhibit "2" and is incorporated herein by reference.

   17.2.     <u>Victorville Trust Deed</u>.  A deed of trust, dated May 21, 2004, was executed by VICTORVILLE in favor of LJB encumbering the Victorville Property (the "Victorville Trust Deed").  The Victorville Trust Deed was recorded on June 3, 2004, in the Official Records of the San Bernardino County Recorder as Document No. 2004-0393243.  A copy of the Victorville Trust Deed is attached hereto as Exhibit "3" and incorporated herein by this reference.

///

17.3.     K. Rubin Guaranty. A commercial guaranty, dated May 21, 2004, was executed in favor of LJB by K. RUBIN (the "K. Rubin Guaranty") whereby K. RUBIN "absolutely and unconditionally" agreed to pay LJB the indebtedness of VICTORVILLE to LJB. A copy of the K. Rubin Guaranty is attached hereto as Exhibit "4" and incorporated herein by this reference.

17.4.     G. Rubin Guaranty. A commercial guaranty, dated May 21, 2004, executed by in favor of LJB by G. RUBIN (the "G. Rubin Guaranty") whereby G. RUBIN "absolutely and unconditionally" agreed to pay LJB the indebtedness of VICTORVILLE to LJB. A copy of the G. Rubin Guaranty is attached hereto as Exhibit "5" and incorporated herein by this reference.

17.5.     Victorville Extension Agreement. An Extension of Credit Agreement, dated May 9, 2007, executed by and between LJB and VICTORVILLE whereby the maturity date for the Victorville Loan was extended from June 1, 2007 to June 1, 2008 ("Victorville Extension Agreement"). In addition, the Victorville Extension Agreement raised the interest rate ceiling to 8.500% and confirmed that the interest rate for the Victorville Loan remained adjustable. A copy of the Victorville Extension Agreement is attached hereto as Exhibit "6" and incorporated herein by this reference.

18.     Exhibit "2" through and including Exhibit "6" are referred to herein as the "Victorville Loan Agreement."

19.     The Victorville Loan Agreement provided that LJB is entitled to recover attorney's fees, legal expenses, court costs, and all other sums provided by law associated with the collection of the amounts due and owing thereunder.

**The Loan from TANDIS**

20.     Based upon a search of the Official Records of San Bernardino County Recorder's Office, Plaintiff is informed and believes that, on or about April of 2007, VICTORVILLE obtained a loan from TANDIS which was secured by a deed of trust, dated April 25, 2007, and recorded on July 25, 2007, as Instrument No. 2007-0434547 in the Official Records of San Bernardino County Recorder's Office (the "Tandis Trust Deed"). A copy of the Tandis Trust Deed is attached as Exhibit "7" and incorporated herein by this reference.

**The Sale of the Victorville Loan to Marchmont**

21. In or about March of 2008, LJB sold the Victorville Loan to MARCHMONT. In order to purchase the Victorville Loan, MARCHMONT obtained a loan from LJB in the amount of Three Million Eight Hundred Thousand Dollars ($3,800,000), referred to as LJB loan number 1063023346 (the "Marchmont Loan"). The following documents were executed in connection with the Marchmont Loan:

21.1. <u>Marchmont Note</u>. A promissory note, dated March 28, 2008, was executed in favor of LJB by MARCHMONT in the principal amount of Three Million Eight Hundred Thousand Dollars ($3,800,000) (the "Marchmont Note"). Pursuant to the terms of the Marchmont Note, MARCHMONT agreed to make twenty-four (24) consecutive monthly interest payments, beginning April 25, 2008, at an interest rate based on the Index (defined therein as "THE LOWEST NEW YORK PRIME RATE IN EFFECT ON THE FIRST BUSINESS DAY OF THE MONTH (CYCLE) AS PUBLISHED IN THE MONEY RATE SECTON OF THE WEST COAST EDTION OF THE WALL STREET JOURNAL") plus -0.500 percentage points over the Index (resulting in an initial interest rate of 4.750%). MARCHMONT further agreed to make the following eleven (11) consecutive monthly interest payments, beginning April 25, 2010, at an interest rate equal to the Index. Lastly, MARCHMONT agreed to make one lump payment on March 25, 2011, in the full amount of any and all principal, interest, and other unpaid amounts due under the Marchmont Note. The Marchmont Note provided that, upon default, the interest rate then in effect would immediately increase by 3.000 percentage points over the Index and that the borrower would be charged a late charge of five percent (5.000%) of the regularly scheduled payment or $5.00, whichever was greater. A copy of the Marchmont Note is attached hereto as Exhibit "8" and incorporated herein by this reference.

21.2. <u>Marchmont Security Agreement</u>. A commercial security agreement, dated March 28, 2008, was executed in favor of LJB by MARCHMONT (the "Marchmont Security Agreement"). The Marchmont Security Agreement granted to LJB a security interest in the Victorville Loan as collateral for the Marchmont Loan. LJB's perfection of the Victorville Note was achieved through possession of instrument pursuant to California Commercial Code section

9313.  Through the Receivership of LJB, FDIC-R obtained possession of the Victorville Note and has retained possession.  A copy of the Marchmont Security Agreement is attached hereto as Exhibit "9" and incorporated herein by this reference.

  21.3. <u>Twin Guaranty</u>.  A commercial guaranty, dated March 28, 2008, was executed in favor of LJB by TWIN (the "Twin Guaranty").  Under the Twin Guaranty, TWIN "absolutely and unconditionally" agreed to pay MARCHMONT's indebtedness to LJB.  A copy of the Twin Guaranty is attached hereto as Exhibit "10" and incorporated herein by this reference.

  21.4. <u>Benward Guaranty</u>.  A commercial guaranty, dated March 28, 2008, was executed in favor of LJB by BENWARD (the "Benward Guaranty").  Under the Benward Guaranty, BENWARD "absolutely and unconditionally" agreed to pay the MARCHMONT's indebtedness to LJB.  A copy of the Benward Guaranty is attached hereto as Exhibit "11" and incorporated herein by this reference.

  21.5. <u>Marchmont Amended Note</u>.  An amended promissory note, dated March 28, 2008, was executed in favor of LJB by MARCHMONT (the "Marchmont Amended Note").  The Marchmont Amended Note required MARCHMONT to provide ongoing documentation to LJB concerning its financial condition and provided that any default by MARCHMONT in complying with its provisions would cause the annual interest rate on the Marchmont Loan to increase by an additional 3.000% until cured.  A copy of the Marchmont Amended Note is attached hereto as Exhibit "12" and incorporated herein by this reference.

  21.6. <u>Marchmont Assignment</u>.  An assignment of the Victorville Deed of Trust, dated March 28, 2008, executed by LJB in favor of MARCHMONT (the "Marchmont Assignment").  The Marchmont Assignment was recorded on April 1, 2008, in the Official Records of San Diego County Recorder's Office as Instrument Number 2008-0142555.  A copy of the Marchmont Assignment is attached hereto as Exhibit "13" and incorporated herein by this reference.

  21.7. <u>Marchmont Collateral Assignment</u>.  A collateral assignment of deed of trust dated March 28, 2008, executed in favor of LJB by MARCHMONT ("Marchmont Collateral Assignment").  The Marchmont Collateral Assignment assigned to LJB all beneficial interest that

was held by MARCHMONT in the Victorville Trust Deed, "[t]ogether with the note or notes referenced therein, and any and all money that is due or which may become due thereon." The stated purpose of the Marchmont Collateral Assignment was to secure performance under the Marchmont Note and Marchmont Security Agreement. A copy of the Collateral Assignment is attached hereto as Exhibit "14" and incorporated herein by this reference.

21.8.    <u>Marchmont Distribution Request</u>.  A distribution request and authorization, dated March 28, 2008, executed by MARCHMONT ("Marchmont Distribution Request"). The Marchmont Distribution Request provided instructions to LJB regarding distribution of the funds from the Marchmont Loan. A copy of the Disbursement Request is attached hereto as Exhibit "15" and incorporated herein by this reference.

22.    Exhibit "8" through and including Exhibit "15" are referred to herein as the "Marchmont Loan Agreement." FDIC-R is currently the lawful owner and holder of the documents comprising the Marchmont Loan Agreement.

23.    The Marchmont Loan Agreement further provided that LJB is entitled to recover attorney's fees, legal expenses, court costs, and all other sums provided by law associated with the collection of all amounts owed by MARCHMONT.

**Default by MARCHMONT**

24.    On or about December 27th, 2009, the Marchmont Defendants defaulted under the terms of the Marchmont Loan Agreement by, among other things, failing to make the payments on the Marchmont Note when due and failing to pay-off the balance of the Marchmont loan when due on March 25, 2011.

25.    FDIC-R has made a demand on the Marchmont Defendants to pay all amounts due on the Marchmont Loan Agreement. In addition, the FDIC-R has demanded all the books and records for the Victorville Loan Agreement to be turned over to the FDIC-R and that MARCHMONT execute and assignment of the Victorville Trust Deed transferring its ownership to the FDIC-R. The FDIC-R also demanded that any principal payment made under the Victorville Loan Agreement be turned over the FDIC-R. FDIC-R has also demanded that the Marchmont Defendants provide the FDIC-R with current financial information as required under the terms of the Marchmont Amended

Note.  However, the Marchmont Defendants have ignored each of the demands of the FDIC-R and have failed and refused to comply with the FDIC-R's demands.

26.   The Marchmont Defendants have further failed and refused to pay the FDIC-R's attorney's fees, legal fees, costs and expenses incurred to date related to the enforcement of the various documents executed in connection with the Marchmont Loan Agreement. The Marchmont Loan Agreement entitles the FDIC-R to an award of its attorneys' fees, trustee's fees and costs incurred herein.

27.   The Marchmont Defendants' actions in failing and refusing to comply with the FDIC-R's above demands constitute a default under the Marchmont Loan Agreement.  The defaults have continued through the date of this complaint.

**Default of VICTORVILLE**

28.   Under the Marchmont Loan Agreement, the FDIC-R has the right to collect on the Victorville Loan and to apply any proceeds from the Victorville Loan to the debt owed by MARCHMONT.  Although the Victorville Loan was due and payable in full as of June 1, 2008, the FDIC-R is informed and believes that all or a portion of the Victorville Loan is still due and owing to MARCHMONT.

29.   The FDIC-R has made a demand upon the Victorville Defendants to make any payments due under the Victorville Loan directly to the FDIC-R, but the Victorville Defendants have failed to make any payments to the FDIC-R.

30.   The Victorville Defendants have also failed to pay the FDIC-R's attorney's fees, legal fees, costs and expenses incurred to date related to the enforcement of the various documents executed in connection with the Victorville Loan Agreement.  The Victorville Loan Agreement entitles the FDIC-R to an award of its attorneys' fees, trustee's fees and costs incurred herein.

31.   The Victorville Defendants' failure to pay all remaining amounts due on the Victorville Loan Agreement and all other associated fees and costs upon demand by the FDIC-R constitutes a default on the part of Victorville according to the terms of the Victorville Loan Agreement. The defaults have continued through the date of this complaint.

///

## FIRST CAUSE OF ACTION

### (Judicial Foreclosure of the Victorville Property)

### (Against VICTORVILLE and TANDIS)

32. Plaintiff realleges and incorporates by this reference the allegations contained in paragraphs 1 through 31 above, inclusive, as if fully set forth herein.

33. VICTORVILLE breached the terms of the Victorville Loan Agreement by, among other things, failing to make payments when due, defaulting under the terms of the agreement, failing to make the loan payment in full upon maturity and failing to pay the FDIC-R's attorneys' fees, legal expenses and, costs.

34. TANDIS is a junior lien holder on the Victorville Property through its interest in the Tandis Trust Deed.

35. As a direct and proximate result of the breaches and failure and refusal to cure, the FDIC-R has been damaged in an amount according to proof at trial but in excess of $2,600,000.00, as of May 1, 2012, plus interest thereon at the legal rate or in accordance with the terms of the Victorville Loan Agreement, and inter alia, attorney's fees, legal expenses, and costs.

36. Pursuant to the terms of the Victorville Trust Deed, and pursuant to applicable law, the FDIC-R has the right to have the Victorville Property sold at a judicial foreclosure sale to satisfy the outstanding debts of Victorville. Further, the FDIC-R has the right to an order adjudging that the Victorville Trust Deed is foreclosed, that a judgment be made for the sale of the Victorville Property, according to law, by a levying officer to be appointed by the Court, that the proceeds of the sale be applied in payment of the amounts due the FDIC-R, that all defendants, and each of them, and all persons claiming under them, after execution of the Victorville Trust Deed, whether as lien claimants, judgment creditors, claimants under a junior deed of trust (including but not limited to the Tandis Trust Deed), purchasers, encumbrances, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the Victorville Property and every part thereof when time for redemption has lapsed.

37. Pursuant to the terms of the Victorville Loan Agreement, VICTORVILLE agreed to pay attorneys' fees and all other costs and expenses that may be incurred by FDIC-R in the

enforcement of the Victorville Loan. The FDIC-R has been required to retain the Paul T. Johnson Law Group, APC to bring this action on its behalf, and has incurred and will incur substantial attorneys' fees, legal expenses and costs of suit herein.

## SECOND CAUSE OF ACTION

**(Breach of Contract – Marchmont Loan Agreement)**

**(Against MARCHMONT)**

38. Plaintiff realleges and incorporates by this reference the allegations contained in paragraphs 1 through 37 above, inclusive, as though fully set forth herein.

39. The FDIC-R has performed all of the conditions, covenants and promises required on its part to be performed in accordance with the Marchmont Loan Agreement.

40. Plaintiff is informed and believes, and thereon alleges, that MARCHMONT breached the Marchmont Loan Agreement by: failing to make payments when due; defaulting under the terms of the Marchmont Loan Agreement; failing to deliver to the FDIC-R books, records, correspondence, documents, instruments, spreadsheets, and proof of payments relating to or concerning the Victorville Loan; failing to provide financial information; and failing to pay the FDIC-R's attorneys' fees, late fees, costs and expenses, among other things.

41. As a direct and proximate result of the breaches and failure and refusal to cure, the FDIC-R has been damaged in an amount according to proof at trial but in excess of $3,936,169.80, as of May 1, 2012, plus pre-judgment interest at the rate provided in the Marchmont Loan Agreement from and after May 1, 2012, and inter alia, attorney's fees, legal expenses, and costs.

## THIRD CAUSE OF ACTION

**(Breach of Contract – Victorville Loan Agreement)**

(**Against VICTORVILLE**)

42. Plaintiff realleges and incorporates by this reference the allegations contained in paragraphs 1 through 41 above, inclusive, as though fully set forth herein.

43. Pursuant to California Commercial Code section 9607, the FDIC-R has the right to initiate action against VICTORVILLE under the terms and conditions of the Marchmont Loan Agreement.

44. The FDIC-R is informed and believes, and thereon alleges, that MARCHMONT performed all of the conditions, covenants and promises required on its part to be performed in accordance with the Victorville Loan Agreement.

45. Plaintiff is informed and believes, and thereon alleges, that VICTORVILLE breached the Victorville Loan Agreement by failing to make payments when due, defaulting under the terms of the Victorville Loan Agreement, and failing to pay the attorneys' fees, late fees, costs and expenses, among other things.

46. As a direct and proximate result of the breaches and failure and refusal to cure, the FDIC-R has been damaged in an amount according to proof at trial but in excess of $2,600,000.00, as of May 1, 2012, plus pre-judgment interest at the rate provided in the Victorville Loan Agreement from and after May 1, 2012, and inter alia, attorney's fees, legal expenses, and costs.

## FOURTH CAUSE OF ACTION

### (Breach of Contract – Guaranty)

### (Against K. RUBIN AND G. RUBIN)

47. Plaintiff realleges and incorporates by this reference the allegations contained in paragraphs 1 through 46 above, inclusive, as though fully set forth herein.

48. Under the terms of the K. Rubin Guaranty and G. Rubin Guaranty, K. RUBIN and G. RUBIN, individually and independently, absolutely and unconditionally guaranteed full payment and satisfaction of the Victorville Loan.

49. Plaintiff is informed and believes, and thereon alleges, that K. RUBIN and G. RUBIN breached their respective guarantees by failing to full payment and satisfaction of the Victorville Loan upon default by VICTORVILLE.

50. As a direct and proximate result of the breaches and failure and refusal to cure by K. RUBIN and G. RUBIN has been damaged in an amount according to proof at trial but in excess of $2,600,000.00, as of May 1, 2012, plus pre-judgment interest at the rate provided in the Victorville Loan Agreement from and after May 1, 2012, and inter alia, attorney's fees, legal expenses, and costs.

///

## FIFTH CAUSE OF ACTION

### (Open Book Account)

### (Against MARCHMONT)

51. Plaintiff realleges and incorporates by this reference the allegations contained in paragraphs 1 through 50 above, inclusive, as though fully set forth herein.

52. MARCHMONT has become indebted to FDIC-R on an open book account for money due.

53. The reasonable value is in an amount according to proof at trial but in excess of $3,936,169.80, as of May 1, 2012, plus pre-judgment interest from and after May 1, 2012. These amounts remain due and unpaid despite demands for payment by FDIC-R on MARCHMONT.

## SIXTH CAUSE OF ACTION

### (Account Stated)

### (Against MARCHMONT)

54. Plaintiff realleges and incorporates by this reference the allegations contained in paragraphs 1 through 53 above, inclusive, as though fully set forth herein.

55. MARCHMONT has become indebted to FDIC-R because an account was stated in writing by and between FDIC-R and MARCHMONT in which it was agreed that MARCHMONT was indebted to FDIC-R based on the Marchmont Loan Agreement.

56. The reasonable value of the account is in an amount according to proof at trial but in excess of $3,936,169.80, as of May 1, 2012, plus pre-judgment interest from and after May 1, 2012. These amounts remain due and unpaid despite demands for payment by FDIC-R on MARCHMONT.

## SEVENTH CAUSE OF ACTION

### (Money Lent)

### (Against MARCHMONT)

57. Plaintiff realleges and incorporates by this reference the allegations contained in paragraphs 1 through 56 above, inclusive, as though fully set forth herein.

58. LJB has lent money to MARCHMONT in an amount according in excess of $3,936,169.80.

59. MARCHMONT is presently indebted to FDIC-R in the foregoing amount, no part of which has been paid to FDIC-R.

60. The reasonable value is in an amount according to proof at trial but in excess of $3,936,169.80, as of May 1, 2012, plus pre-judgment interest from and after May 1, 2012.

## EIGHTH CAUSE OF ACTION

**(Money Had and Received)**

**(Against MARCHMONT)**

61. Plaintiff realleges and incorporates by this reference the allegations contained in paragraphs 1 through 60 above, inclusive, as if fully set forth herein.

62. MARCHMONT received monies from LJB in an amount according to proof at trial in excess of $3,936,169.80.

63. MARCHMONT is presently indebted to FDIC-R in the foregoing amount, no part of which has been paid to the FDIC-R.

64. The reasonable value is in an amount according to proof at trial but in excess of $3,936,169.80, as of May 1, 2012, plus pre-judgment interest from and after May 1, 2012.

## PRAYER

WHEREFORE, FDIC-R prays for judgment against defendants, and each of them, as set forth below:

### ON THE FIRST CAUSE OF ACTION FOR JUDICIAL FORECLOSURE:

1. For damages against VICTORVILLE, according to proof at trial, but in an amount in excess of $2,600,000.00;

2. For attorneys' fees, legal fees and expenses, and costs of suit against VICTORVILLE;

3. For an order adjudging that the rights, claims, ownership, liens, titles, and demands of VICTORVILLE associated with the Victorville Property are subsequent, subordinate, and subject to the liens of the FDIC-R;

4. For an order adjudging that the Victorville Property that is secured by the Victorville Trust Deed be foreclosed, that a judgment be made for the sale of the Victorville Property, according to law, by a levying officer to be appointed by the Court, that the proceeds of the sale be applied in

payment of the amounts due the FDIC-R, that all defendants, and each of them, and all persons claiming under them, after execution of the Victorville Property, whether as lien claimants, judgment creditors, claimants under a junior deed of trust, purchasers, encumbrances, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the Victorville Property and every part thereof when time for redemption has lapsed;

5. For an order awarding the FDIC-R judgment and execution against VICTORVILLE for any deficiency that may remain after applying all proceeds of the sale of the Victorville Property duly applicable to satisfy the amounts due by the court hereunder;

6. For an order permitting the FDIC-R or any party to this action to become a purchaser of the Victorville Property at the foreclosure sale; and

7. For an order directing the levying officer, after the time for redemption has lapsed, to execute a deed to the purchaser of the Victorville Property at the foreclosure sale, and directing that the purchaser be let into possession of such Victorville Property on production of the levying officer's deed.

**ON THE SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT**:

1. For general, special, consequential, and incidental damages according to proof, but not less than $3,936,169.80;

2. For attorney's fees, legal fees and expenses, and costs as allowed by the Marchmont Loan Agreement and/or by law; and

3. For daily interest pursuant to the terms of the Marchmont Loan Agreement, from and after May 1, 2012 until paid.

**ON THE THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT**:

1. For general, special, consequential, and incidental damages according to proof, but not less than $2,600,000.00;

2. For attorney's fees, legal fees and expenses, and costs as allowed by the Victorville Loan Agreement and/or by law; and

3. For daily interest pursuant to the terms of the Victorville Loan Agreement, from and after May 1, 2012 until paid.

**ON THE FOURTH CAUSE OF ACTION FOR BREACH OF GUARANTY**:

1. For general, special, consequential, and incidental damages according to proof, but not less than $2,600,000.00;

2. For attorney's fees, legal fees and expenses, and costs as allowed by the Victorville Loan Agreement and/or by law; and

3. For daily interest pursuant to the terms of the Victorville Loan Agreement, from and after May 1, 2012 until paid.

**ON THE FIFTH CAUSE OF ACTION FOR OPEN BOOK ACCOUNT:**

1. For the open book account for money due from MARCHMONT according to proof at trial, but in an amount in excess of $3,936,169.80;

2. For daily interest pursuant to the terms of the Marchmont Loan Agreement, from and after May 1, 2012 until paid.

**ON THE SIXTH CAUSE OF ACTION FOR ACCOUNT STATED:**

1. For the account stated in writing between FDIC-R and MARCHMONT according to proof at trial, but in an amount in excess of $3,936,169.80;

2. For daily interest in the amount of $3,936,169.80 pursuant to the terms of the Marchmont Loan Agreement, from and after May 1, 2012 until paid.

**ON THE SEVENTH CAUSE OF ACTION FOR MONEY LENT:**

1. For the money lent by LJB to MARCHMONT according to proof at trial, but in an amount in excess of $3,936,169.80;

2. For daily interest pursuant to the terms of the Marchmont Loan Agreement, from and after May 1, 2012 until paid.

**ON THE EIGHTH CAUSE OF ACTION FOR MONEY HAD AND RECEIVED:**

1. For the money had and received from LJB by MARCHMONT according to proof at trial, but in an amount in excess of $3,936,169.80;

2. For daily interest pursuant to the terms of the Marchmont Loan Agreement, from and after May 1, 2012 until paid.

///

**ON ALL CAUSES OF ACTION**

1. For costs of suit incurred herein;

2. For interest at the legal rate as permitted by law;

3. For reasonable attorney's fees incurred as allowed by contract and/or by law; and

4. For such other and further relief as the Court deems just and proper, including equitable relief.

Dated: May 22, 2012                    PAUL T. JOHNSON LAW GROUP, APC


                                       By:   /s/ Paul T. Johnson
                                             Paul T. Johnson
                                             Mark E. Bale
                                             Attorneys for the Federal Deposit Insurance
                                             Corporation as Receiver for La Jolla Bank, FSB


JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
FEDERAL DEPOSIT INSURANCE CORPORATION ACTING AS RECEIVER FOR LA JOLLA BANK, FSB

### DEFENDANTS
MARCHMONT, LLC; TWIN DEVELOPMENT COMPANY; BENWARD WALLACE,; VICTORVILLE 244 LOTS, LLC; KEN RUBIN; GINA R. RUBIN; TANDIS HOMES VICTORVILLE 244, LP

**(b)** County of Residence of First Listed Plaintiff: San Diego
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: San Diego
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
PAUL T. JOHNSON LAW GROUP, APC
5055 Avenida Encinas, Suite 210, Carlsbad, CA 92008; (760)431-8988

Attorneys *(If Known)*
'12CV1242 DMS WMc

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff) (For Diversity Cases Only) and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☒ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
12 U.S.C. § 1441a(l)(1) and 12 U.S.C. § 1819(b)(2)(A)
Brief description of cause:
Judicial Foreclosure, Breach of Contract, Common Counts

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $** 3,936,169.80

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE: 05/22/2012
SIGNATURE OF ATTORNEY OF RECORD: /s/ Paul T. Johnson

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE